**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CYNTHIA VANN-FOREMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 19-cv-8069 |
| | ) | |
| v. | ) | District Judge Robert W. Gettleman |
| | ) | |
| ILLINOIS CENTRAL RAILROAD | ) | Magistrate Judge Jeffrey Cole |
| COMPANY d/b/a CANADIAN | ) | |
| NATIONAL RAILWAY COMPANY, | ) | |
| | ) | |
| Defendants. | | |

**MOTION TO RECONSIDER RULING ON PLAINTIFF'S MOTION TO COMPEL**

**I.      INTRODUCTION**

Plaintiff is respectfully requesting that this Court reconsider its ruling denying Plaintiff's motion to compel certain evidence. Dkt. 57. For the reasons shown below, Plaintiff submits that this is a proper motion to reconsider and that good cause exists to order a key piece of evidence in this case, that being an Event Recorder that had not been previously disclosed (although it should have been based upon written discovery requests) and was just discovered during a deposition taken on January 20, 2021.

Also, and as sort of a prologue to this Motion, in the first instance, Plaintiff's counsel apologizes for not following certain rules as the Court indicated in its previous opinion. With regard to filing a brief over the page limit, there is no excuse – it was an oversight. Further, in connection with the Court's admonition about its order regarding phone calls to the Court, Plaintiff's counsel misapprehended the order set forth by this Court. While not a defense to this, Ms. Diaz (who has been primarily doing the work on the relevant issues) is a very new and

1

young attorney, so she has not had the benefit of many years of experience with the procedures of the Court. Mr. Fox, who is supervising Ms. Diaz, should have done so more carefully but has had some health issues in his family which has taken his time away from his work responsibilities. This is not intended to be an excuse; it is simply an explanation.

The Court also indicated in its memorandum that Plaintiff's argument cited no authority and that perfunctory arguments are waived. Again, Plaintiff cannot argue with that proposition, nevertheless, the Seventh Circuit has acknowledged in another case that in some instances "it could not ordinarily be expected that a necessity existed for a district judge to have cited to him by way of memorandum the Federal rules" when it is obvious what rules are being relied upon to make an argument. *United States v. Cook,* 432 F.2d 1093, 1097 (7th Cir. 1970) (It was apparent that a criminal defendant who cited no authority for a motion was relying on Rule 16(a) of the Federal Rules, which prompted the Court's statement.) Nevertheless, it is hornbook law, and Plaintiff should have cited authority, among other things, to the effect that Court's have broad discretion to control discovery when disputes exist, and that "good cause" is the controlling standard for the requests that Plaintiff spelled out in detail in the brief. *E.g., Pruitt v. Knight,* 2019 WL 1416726, at *1 (S.D. Ind. 2019) ("District courts have broad discretion in matters relating to discovery."). Further, the *Pruitt* Court noted, citing to Rule 26(b), that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). *Id.* Where appropriate, in this brief, Plaintiff has cited to relevant authority. *See infra,* at pp. 2-

Plaintiff is making this motion for reconsideration because, as shown below, this motion is warranted, and good cause does exist, at least in part, for the things that were requested.

## II.     THIS IS A PROPER MOTION UNDER THE LAW FOR A MOTION TO RECONSIDER

Concededly, motions to reconsider are rarely granted.  However, this Court has

acknowledged that there are some circumstances in which motions to reconsider are appropriate.

In another case, this Court noted the issues with motions to reconsider as follows:

> But judges are not omniscient, and "all judges make mistakes." *Fujisawa Pharmaceutical Co., Ltd. v. Kapoor,* 115 F.3d 1332, 1339 (7th Cir.1997). "[I]n any given opinion, [a court] can misapprehend the facts ... or even overlook important facts or controlling law." *Olympia Equipment v. Western Union,* 802 F.2d 217, 219 (7th Cir.1986). And so a court must have the power to redress " '[a] grievous wrong [resulting from] some misapprehension or inadvertence by the judge....' " *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir.1990). Such situations, however, "rarely arise and the motion to reconsider should be equally rare." *Id.* at 1191. *See also, Solis v. Consulting Fiduciaries, Inc.,* 557 F.3d 772, 780 (7th Cir.2009); *Santamarina v. Sears, Roebuck & Co.,* 466 F.3d 570, 571–72 (7th Cir.2006).

*Kelley v. Bd. of Educ. of City of Chicago,* 2012 WL 1108135, at *4 (N.D. Ill. 2012).

In particular, as shown below, this Court in its previous ruling took issue with the time

that Ms. Diaz took to timely facilitate discovery in connection with supplementing responses for

documents.  This Court referenced the fact that "the Plaintiff allowed the defendant until January

11th nearly a month after our last status hearing to supplement deficient responses."  Dkt. 59.  As

shown below, however, with regard to the Event Recorder, which was also requested, Plaintiff

did not find out about its existence until a deposition on January 20, 2021, and then *immediately*

*set forth to address that situation.*  Thus, and perhaps Plaintiff could have been clearer, as shown

below, the Defendants had concealed its existence.  It should have been made known based upon

written discovery that had been issued months earlier.  Plaintiff respectfully requests that the

Court look at the timeline for this as Plaintiff acted, literally, as soon as possible to address this

issue.  Plaintiff submits that it would be a "grievous wrong" to deny Plaintiff the ability to obtain this information.[1]

## A.  THE EVENT RECORDER

At Brian Torres-Regnier's deposition, taken on January 20, Plaintiff's counsel learned for the first-time that there is "Event Recorder" data from Plaintiff's Skills Performance Evaluations. In this evaluation, management rode with Plaintiff while she was operating a train and scored her on various criteria of train operation. The significance of this information is that this Recorder contains unmanipulated data that would confirm or deny that Plaintiff was scored in a non-arbitrary/non-discriminatory fashion, on her Skills Performance Rides, that led to her denial of engineer certification.  This data is a key to this case because it contains *objective* information of Plaintiff's performance on a skills test, which the Defendants contended that Plaintiff failed. Plaintiff strongly disagrees that she failed.   The scoring ultimately led to Plaintiff not being "certified" and thus, allegedly, unable to work.  This is why the Event Recorder is a key piece of evidence in this case.

### 1.  THE TIMELINE RELATED TO  DISCOVERY OF THE EVENT RECORDER

As noted, the existence of Event Recorder data was not disclosed to Plaintiff at any point during written discovery.   Back in *October of 2020*, Plaintiff did several written discovery requests that should have yielded the fact that there even was an "Event Recorder."  Two of these requests were:

**RTP 14:** Any and all performance and/or work quality evaluations of Plaintiff.

---

[1] Plaintiff notes that this Court has held that the timing for a motion to compel and what is too late has to be determined based on the unique factors of a particular case.  *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 333 (N.D. Ill. 2005)

> **RTP 22:** Any and all documents, including correspondence, e-mail, memos, notes, reports, computer data, or otherwise referring or relating to any denial of certification, criticism, demotion, suspension, counseling, warning, any other criticism of Plaintiff's job performance.

Exhibit A. The responses were evasive and contained boilerplate objections (see ex. A, numbers (responses) 14, 22.[2]) More importantly, the responses did not reveal that an Event Recorder existed. In short, this was concealed from the beginning based upon baseless and bad faith objections.

The subsequent timeline is as follows:

**12/17/20**: Related to the non-disclosure of the evidence is that Plaintiff began requesting depositions of the relevant persons, *the same day* as the status conference of December 17, 2020 wherein this Court granted Plaintiff a discovery extension. This was, in large part, so that Plaintiff could obtain depositions. Ex. B.

**12/22/20**: Plaintiff's counsel, Jaclyn Diaz, and Defendant's counsel, Paula Pitrak, engaged in a telephonic 37.2 conference about discovery deficiencies as requested by Plaintiff in a December 14, 2020 email. (*See* Ex. C).

Plaintiff engaged in the 37.2 conference, because not only the law requires it, *see infra,* but this Court also sternly admonishes attorneys that these conferences must be had in its rules contained on its website. *See* Court's website page, "Case Procedures," "Compliance with Local Rule 37.2." ("No motion regarding discovery dispute of any kind will be considered in the absence of strict compliance with Local Rule 37.2.") At this conference, among other things, Plaintiff's counsel confirmed with Defendant's counsel that they would be presenting the

---

[2] As can be seen on Exhibit A, this is the *Third Supplemental Responses,* necessitated because Plaintiff had to continually push the Defendant to obtain any meaningful discovery because it engaged in endless denials and delays requesting repeated endless and futile "meets and confers" which were not dealt with in good faith. *See e.g., infra* pp. 4-7 and exhibits E and H.

Defendant employees Plaintiff wished to depose and that Defendant was working on confirming their availability for deposition. At that time, Plaintiff gave Defendant 3 weeks to supplement discovery *as it was requested because of the holidays* and Plaintiff confirmed that Defendant would present certain employees for deposition. Defendant indicated they were confirming availability.

**1/7/21**: The holidays came and went, and Plaintiff had not heard from Defendants about deposition dates. Plaintiff again sent an email to Defendant to follow up on the availability of Defendant employees for deposition. Ex. D.

**1/8/21**: The next day, January 8, – a Friday, Defendant provided correspondence "memorializing" the parties' December 22, 2020 telephonic meet and confer. Ex. E. This correspondence misrepresented what had been agreed upon, two weeks earlier,[3] regarding discovery to be produced and again did not mention dates for the requested depositions. Plaintiff was intent on quickly addressing the misrepresentations.

**1/11/21**: Immediately, on the following Monday, Plaintiff addressed the misrepresentations regarding documents to be produced. Ex. F. Also, on this date, Defendant finally provided dates for the deposition and indicated that they could only do the 3 depositions during the last 10 days of discovery. The depositions were thus scheduled on 1/20, 1/25, and 1/26/2021.

**1/20/21**: Plaintiff deposed witness Brian Torres- Regnier. At this deposition, Plaintiff's counsel learned that several responses to written discovery had been misrepresented. One misrepresentation was that Plaintiff learned for the first-time that there is "Event Recorder" data

---

[3] As can be seen in the emailed letter, the Defendant simply maintained boilerplate objections continuing to deny and dely. They also continued to state they wanted to further talk about it. Ex. E, at 5.

from Plaintiff's Skills Performance Evaluations. Again, this evidence was never before revealed despite written discovery that should have revealed its existence. *Immediately* after the deposition, Plaintiff sent Defendant an email requesting that they supplement their written production to produce the Event Recorder. Plaintiff also offered, as she was required to do under the rules, to meet and confer to discuss the matter. Ex. G, January 20, 2021 email.

**1/21/21:** Plaintiff was acting as diligently as was possible. On the following day, Plaintiff followed up her January 20th email with another email on January 21st asking for an update as to whether Defendant intended to supplement their production as requested and notifying Defendant that Plaintiff intended to re-depose Brian Torres-Regnier to ask him about the event recorder data from the Skills Performance Evaluation he conducted of Plaintiff. *Id*.

**1/22/21:** After 5:00 p.m. on January 22, Defendant emailed to Plaintiff's regarding the Event Recorder downloads from Plaintiff's Skills Performance rides only to argue that they were not "relevant" even though this information would reveal whether Plaintiff was scored on her performance accurately or in a biased manner. Further, in keeping with its delay and deny tactics, Defendants also argued that this had not been previously raised in a 37.2 conference *that occurred prior to Plaintiff even learning of the existence of the Event Recorder. See* Ex. H at 4.

**1/26/21**: To further obviate any argument that Plaintiff had not appropriately held a meet and confer, as suggested by Defendant, Plaintiff requested and held another meet and confer on this date (with Mr. Fox now being present). It was futile, and not withstanding that relevance is much broader in discovery than would otherwise be, and that the Event Recorder is a key to this case, Defendant stood on its objection. Thus, more delay and deny.

**1/28/21**: Plaintiff *immediately* began preparing her motion to compel (that was denied by this Court). Two days later, it was filed. In the motion, as this Court knows, Plaintiff set forth a

lengthy timeline of the events and the fact that the Event Recorder, among other things, that was learned about for the first time at the depositions, was not produced.[4]

### B. PLAINTIFF IS ENTITLED TO PRODUCTION OF THE EVENT RECORDER

As noted above, the fact is, in connection with the Event Recorder, and other misrepresented information discovered at deposition (*see* fn.4*, supra*), Plaintiff has been as diligent as reasonably possible, in requesting the Event Recorder in its motion to compel. Plaintiff did not know about the Event Recorder until the January 20 deposition (which Plaintiff had been trying to obtain since December 17) because Defendant *concealed its existence.*

To the extent that this Court still believes that Plaintiff has been neglectful or less than diligent, Plaintiff respectfully submits that, at the very least, she engaged in conduct that should be deemed "excusable neglect." "A court determines whether a party has failed to act because of "excusable neglect" by considering the relevant circumstances surrounding the party's omission. *Robb v. Norfolk & W. Ry. Co.,* 122 F.3d 354, 362 (7th Cir.1997). Further, the Supreme Court has set forth the factors for a court to consider in evaluating whether "excusable neglect" exists. This includes "the danger of prejudice to the [defendant], the length of the delay and its potential impact on judicial proceedings, the reasons for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 395, 113 S.Ct. 1489 (1993); *see also, Anderson v. Quad/Graphics Inc. Group Disability Income Ins. Plan,* 2010 WL 2541021, at *4 (E.D. Wis. 2010).

---

[4] Another thing that was learned was that the 6 employees, who Defendant had claimed in response to written discovery were also denied certification (as was Plaintiff), was also not true. The deponent at the deposition testified he was not aware of them even though it was represented that the deponent supposedly evaluated them.

Testing Plaintiff's conduct under these standards, at worst, Plaintiff should be deemed to have her conduct in trying to obtain the requested discovery judged as "excusable neglect," because she acted as promptly as was reasonably possible once she found out about the Event Recorder. Further, the reason for the "delay" was that Plaintiff did not know about the Recorder's existence; it was also not in Plaintiff's reasonable control to obtain this information sooner, and Plaintiff is acting in good faith. Finally, in any event, it is difficult to conceive of prejudice to the Defendant by this request since it is the Defendant who caused the delay. In any event there is no prejudice. Thus, Plaintiff submits that her motion should be considered and granted.

Finally, the Event Recorder should be produced because it is a key to the evidence as it will confirm or contradict Defendant's assertions about Plaintiff's performance which became the reason for her termination. Defendant's objection to producing, was based upon requesting further endless and futile "meet and confer" conferences, and that it is not "relevant." The latter is not a valid objection under Rule 26(b). Under the law, pursuant to Federal Rule of Civil Procedure 26(b), the parties are entitled to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, unless otherwise limited by the Court, regardless of its admissibility at trial. FED. R. CIV. P. 26(b). "For discovery purposes, relevancy is construed broadly to encompass 'any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case.' " *Methodist Health Servs. Corp. v. OSF Healthcare Sys.*, 2014 WL 5465401 *3-*4 (C.D. Ill. 2014) (*quoting Oppenheimer Fund, Inc. v Sanders*, 437 U.S. 340, 351, (1978) ).

Also, a party opposing discovery has the burden of proving that the requested discovery should be disallowed. Additionally, where the objection is lack

of relevance, the party resisting the discovery has the burden to establish this by demonstrating that the requested discovery is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. *Peppers v. Credit One Bank, N.A.,* 2018 WL 8244003, at \*2 (C.D. Ill. 2018). Hence, the Event Recorder should be ordered produced as it is appropriately relevant.

## C.     PLAINTIFF HAS GOOD CAUSE TO REQUEST EXTENSION OF DISCOVERY

"Good cause" and lack of prejudice to the opposing party are the reasons that an extension of discovery should be granted. *See, e.g.*, *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 832 (7th Cir. 2016)(good cause requirement for modification of schedule is "a standard that 'primarily considers the diligence of the party seeking amendment.' "); *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011)("In making a Rule 16 (b) good-cause determination, the primary consideration for district courts is the diligence of the party seeking amendment."). *Jackson-El v. City of Markham,* 332 F.R.D. 583, 584 (N.D. Ill. 2019)

Plaintiff believes that good cause exists because as shown by the timeline above, Plaintiff was diligent in her actions and the requested discovery was not made known until the depositions occurred. Further, Plaintiff tried to schedule over the holidays and Defendant would not cooperate in having them sooner scheduled, but not for lack of trying by Plaintiff.

Defendant has been engaging in gamesmanship with regard to all aspects of discovery, not only this past month, but throughout discovery. Defendant has made a mockery of the 37.2 meet and confer requirement by repeatedly indicating that it must happen on subjects that it had already occurred, and then not acting in good faith in conducting the conferences, as it does nothing more than maintain objections without any cause. For examples of this, Plaintiff urges the Court to look at exhibit E (Defendant's letter maintaining essentially *all* their

10

objections upon doing the requested meet and confer), and exhibit H (Defendant's letter following a meet and confer, again maintaining its objections and demanding more meet and confers.). But, all of the delayed follow-up would not have been occurred had Defendant not concealed the existence of the Event Recorder until depositions.

Thus, among the reasons Plaintiff submits that good cause exists to extend discovery is that the Event Recorder downloads from Plaintiff's Skills Performance Rides be produced, as Plaintiff is requesting. Further, Plaintiff will need to re-depose Brian Torres-Regnier and Larry Tharpe to question them on Plaintiff's performance as depicted in the download. Again, had Defendant supplemented their production of documents shortly after January 20 when first requested (after its discovery after the first deposition) rather than stall, Plaintiff would have been able to at least question Larry Tharpe about the download as his deposition which was not until January 25, and there would be no need to re-depose him.[5]

### III.    CONCLUSION

Plaintiff has further limited what was requested in her motion to compel to just keep it to the minimum because of the importance of what is being requested and to convince the Court that this motion should be granted. For all the foregoing reasons, Plaintiff respectfully submits that this motion be granted and that there is good cause to:

(1) Order the production of the Event Recorder.

---

[5] Not to belabor the point but the degree of deny, delay, and conceal was extraordinary. At the depositions it was also learned that Steve Miller took notes of his meeting with Plaintiff where she complained of discrimination and harassment, but these were not turned over in discovery. Also, Brian Torres-Regnier and Stephen Condon claimed in their depositions that Plaintiff was given additional time for training in anticipation of her Skills Performance Evaluation than other employees. It was further testified that there is a database that records information as to how long an individual is given for training, again not disclosed in document production.

(2) Order that Plaintiff be permitted to re-take the depositions of Brian Torres-Regnier and Larry Tharpe to inquire about the Event Recorder information and other things that were also not previously disclosed; and

(3) Order that Plaintiff can have whatever the Court feels is a reasonable amount of time to do the above.

s/Edward M. Fox
Attorney for Plaintiff

ED FOX & ASSOCIATES, LTD.
300 W Adams St, Ste 330
Chicago, IL 60606
(312) 345-8877
efox@efoxlaw.com