IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CYNTHIA VANN-FOREMAN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 19 C 8069 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| ILLINOIS CENTRAL RAILROAD CO., | ) | |
| d/b/a CANADIAN NATIONAL | ) | |
| RAILWAY CO., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**INTRODUCTION**

Lawyers and litigants who decide to play by rules of their own invention
will find that the game cannot be won."

*United States v. Golden Elevator, Inc.,* 27 F.3d 301, 302 (7th Cir.1994)

The plaintiff has filed a Motion for Reconsideration of my Order denying her recent Motion to Compel and for a second extension of the discovery deadline. [Dkt. #60]. The most recent motion for an extension of the discovery deadline was the second last-minute motion for an extension in the span of just a few weeks, and it came after an Order warning that such eleventh-hour filings were not acceptable. As discussed below, the Motion for Reconsideration – which is a third attempt to get an eleventh-hour extension of time to complete routine discovery – which ought to have been completed months ago – [Dkt. #60] is denied.

**I.**

It is unusual for a Motion for Reconsideration of a discovery ruling to be made in lieu of

objections with the District Court under Fed.R.Civ.P. 72. Objections filed under Rule 72 preserve assignments of error for appeal, while a motion for reconsideration does not. But, as the 14-day deadline for filing objections has now passed with plaintiff instead choosing to file a motion for reconsideration, any arguments plaintiff might have had have been waived. *See Davis v. Kayira*, 938 F.3d 910, 917 (7th Cir. 2019)(". . . Rule 72(a) requires an objection to nondispositive orders within 14 days and itself bars further review of untimely objections . . . .").

Even under ordinary circumstances, motions for reconsideration are disfavored – and for sound institutional reasons. *See LAJIM, LLC v. General Electric*, 917 F.3d 933 (7th Cir. 2019); *Caisse Nationale de Credit Agricole v. CBI Industries Inc.*, 90 F.3 1264, 1269 (7th Cir. 1996); *Beezley v. Fenix Parts, Inc.*, 320 F.R.D. 198, 201 (N.D. Ill. 2018)(and cases cited). They serve an extremely limited purpose: the correction of manifest errors of law or fact or the presentation of newly discovered evidence. *Hicks v. Midwest Transit, Inc.*, 531 F.3d 467, 474 (7th Cir. 2008); *Caisse Nationale de Credit Agricole*, 90 F.3d at 1269.[1] Importantly, a manifest error is not merely some mistake; it occurs when the district court commits a "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Burritt v. Ditlefsen*, 807 F.3d 239, 253 (7th Cir. 2015).

---

[1] It is not entirely clear from a review of plaintiff's Motion for Reconsideration that the Motion recognizes that the standard is manifest error. In closing, the Motion submits:

> Plaintiff does not argue that "clear error" is the standard for a Motion to Reconsider; rather, Plaintiff merely contends that if this court would consider this Motion to Reconsider because of misapprehension of the timeline as discussed above, then excusable neglect may be considered for the merits of the motion, that is, the time period between January 20 and January 28 – the time period that should have been considered in evaluating Plaintiff's initial motion to compel and determining whether the Plaintiff acted diligently in seeking to compel its production.

[Dkt. #64, at 11]. But manifest error *is* the standard and as will be shown, the plaintiff's timeline is neither complete nor completely accurate.

A Motion for Reconsideration of a discovery order is even more limited, as discovery rulings often involve matters of discretion. Overturning a discovery order requires a showing that the ruling was clearly erroneous. *Hassebrock v. Bernhoft*, 815 F.3d 334, 340 (7th Cir. 2016); *Berkeley*IEOR v. Teradata Operations, Inc.*, 2020 WL 5230744, at *1 (N.D. Ill. 2020). That's a tough hill to climb; more like a mountain. *See Industries, Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 627 (7th Cir. 2001) (concluding that a decision is only clearly erroneous if "it strikes us as wrong with the force of a 5 week old, unrefrigerated, dead fish"). *Cf. Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997)("The clear error standard means that the district court can overturn the magistrate judge's ruling only if [it] is left with the definite and firm conviction that a mistake has been made."). Yet, in many cases – and this one is no exception – an attorney who files a motion for reconsideration is looking for a "do-over." *Terese F. v. Saul*, 396 F. Supp. 3d 793, 795 (N.D. Ill. 2019); *see also Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995)("Were such a procedure to be countenanced, some lawsuits really might never end, rather than just seeming endless."). But a court's "opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco. Industries, Inc.*, 123 F.R.D. 282, 288 (N.D.Ill.1988); *see also Owens Trophies, Inc. v. Bluestone Designs & Creations, Inc.*, 2014 WL 5858261, at *3 (N.D. Ill. 2014); *On Command Video Corp. v. Roti*, 2010 WL 2740309, at *1 (N.D. Ill. 2010). The plaintiff's motion in this instance is all the more frustrating and inappropriate because plaintiff has made the court, and opposing counsel to trod over the same ground multiple times. [Dkt. ##46, 47, 49, 50, 56, 57, 58, 60, 61]. There have been over 200 pages of filings and rulings because, as plaintiff concedes, she has ignored a number of rules and procedures, and misread orders.

That highlights a point that attorneys filing motions for reconsideration rarely consider: there is another side. They may have been cavalier about properly supporting a motion, or may have neglected a few deadlines with what they feel are valid excuses, but what about the other side? The other side has to defend against the original motion, and again against a Motion for Reconsideration. It must always be remembered that every accommodation made for one side visits a corresponding hardship of some degree on the other. While some Motions for Reconsideration are proper and necessary, courts have not looked kindly on such motions because they so often needlessly and improperly take the time and attention that other cases in the queue both need and are entitled to – and without necessary and appropriate justification. *See* discussion in *General Insurance Co. Of America v. Clark Mall Corp.*, 2010 WL 2901788 at *1-2 (N.D.Ill.2010). This is such a case.

**II.**

The central piece of discovery that drove these successive motions is an "event recorder." Plaintiff claims that there is data from this device that would give an objective reading of her train operation test, which she failed by a large margin, scoring just 59% where 80% was passing. [Dkt. #61, at 4; #62-15, at 74-76].[2] Plaintiff thinks she passed, although it's not clear the data from the event recorder, which apparently records use of throttle and brake [Dkt. #62-15, at 74-76], would provide an objective assessment of plaintiff's complete test. According to plaintiff's opening brief, she had no idea an event recorder existed until she deposed Brian Torres-Regnier on January 20, 2021. [Dkt. #61, at 6]. She wants discovery reopened for production of the event recorder and to

---

[2] The event recorder seems akin to what we might more commonly know as the "black box" on airplanes; used for incident or accident investigations. *See* 49 CFR § 229.135; 49 CFR part 218, subpart D. Stephen Condon testified that, per federal regulations, event recorders were not allowed to be used in skills evaluation and that he had never reviewed one in connection with a skills evaluation. [Dkt. #62-17, at 64].

4

have Mr. Torres-Regnier and Larry Tharpe sit for second depositions regarding the event recorder.

Plaintiff's motion for reconsideration is based on what plaintiff depicts as the timeline in this case. [Dkt. #61, at 4-7; ]. According to the plaintiff, the court's manifest error in denying her second, last-minute motion for an extension of discovery was a misapprehension as to the timeline of her discovery of the existence of an event recorder:

> The timeline for the information about the event recorder, however, was different than that noted by the Court as Plaintiff did [sic] learn of its existence until January 20, 2021 at the deposition of Brian Torres-Regnier. Plaintiff documented this part of the timeline as it related to the event recorder at paragraphs 6, and 39-46 of her original motion to compel. Dkt. 56, paras. 6, 39-46. Thus, the basis for the motion to reconsider was a misapprehension of the timeline as it related to the event recorder.

[Dkt. #64, at 8].

But the plaintiff's timeline is an edited version. In order to understand this ruling, it is important to understand the *full* timeline of this case, not just the recent one that plaintiff hopes to leave the focus upon. What plaintiff failed to do before is what led plaintiff to where she is now, and no mistake was, or should be, made about it.[3]

---

[3] The ruling plaintiff hopes to overturn was not based entirely on the event recorder timeline, of course, but on a handful of errors plaintiff made. Plaintiff has offered a couple of excuses or explanations for some of those missteps. [Dkt. #61, at 1-2]. First, the plaintiff concedes that, rather than file a timely motion to compel and for an extension of the discovery deadline the last time around – despite a previous ruling advising, with supporting case law, that last minute motions were improper [Dkt. #49] – she instead called chambers a couple of days before the deadline, claiming she was following my instructions to call the courtroom deputy if *discovery issues* arose. [Dkt. #56, at 4]. As I pointed out in my ruling on the motion plaintiff eventually filed at the end of that week, *there were no such instructions!* The instructions in the Order clearly and unambiguously said: "Counsel should contact the Court should any difficulties arise *during depositions*. I can be reached by a call to my courtroom deputy, . . . ." [Dkt. #50]. Counsel explained the they somehow confused the word "depositions" with the word "discovery." In the current motion for reconsideration, counsel explains that co-counsel "has not had the benefit of many years of experience with the procedures of the Court." [Dkt. #61, at 2]. Perhaps not. But counsel had years of familiarity with simply English. And no one could have misconstrued what was intended. In short, the instruction could not have been clearer.

(continued...)

**III.**

Plaintiff's timeline begins in October of 2020, when she made her first discovery requests, and she seems to emphasize how early that was in the case. [Dkt. #61, at 4 ("Back in *October of 2020*, . . . ."(emphasis original)]. It wasn't. As of February 2, 2020, discovery was to close on September 30, 2020 – *a date chosen by the parties*. [Dkt. ##9, 11]. Covid extension orders entered from March 16 through April 30 extended that deadline by 77 days until December 16, 2020. [Dkt. ##14, 17-18]. But even during those 77 days, there was nothing that prevented parties from conducting written discovery safely. Absolutely nothing prevented plaintiff from serving those October discovery requests long before October, and plaintiff does not suggest otherwise.

---

³(...continued)
The plaintiff also explains that she did not cite any pertinent authority to support her previous motion for an extension and to compel because it should have been obvious what rules plaintiff was relying on. However, in the 50-year-old case the plaintiff relies upon for that proposition, the opponent of the motion for inspection of government evidence cited to the applicable rule and, moreover, there could have been only one as the criminal defendant in that case had filed a simple, two-sentence motion for inspection.. *United States v. Cook*, 432 F.2d 1093, 1097 (7th Cir. 1970). By comparison, here, the plaintiff's motion was 17 pages long, concerned seven separate discovery requests, and involved questions of relevance, validity of objections, diligence, and good cause. [Dkt. #56].

No one could have reasonably thought so convoluted and factually intensive a Motion could be properly handled on the phone in the midst of a deposition. Albeit unsupported, not only was it far more complex than the motion in *Cook*, it would have demanded a great deal more independent legal research by the court, which would have put the defendants at a disadvantage. *See United States v. Gustin*, 642 F.3d 573, 575 (7th Cir. 2011)("it is not a judge's job to assist one advocate at another's expense."); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

Pitched battles over discovery, with multiple motions to compel multiple responses, were all but unknown half a century ago at the time of *United States v. Cook*. Since then, the bar has evolved and the focus and effort of practice has moved discernibly from substantive matters to discovery matters. Moreover, *United States v. Cook* was about fifteen years before the Seventh Circuit first made mention of a waiver rule, *see Hershinow v. Bonamarte*, 735 F.2d 264, 266 (7th Cir. 1984), and a couple of decades before the rule began to crystalize into what we have known – for many years – today. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived ...."); *Williams v. Bd. of Educ. of City of Chicago*, 982 F.3d 495, 511 (7th Cir. 2020). Again, the court does not doubt the veracity of counsel, it simply fails to grasp the thinking.

And, indeed, defendants served their first set of interrogatories and discovery requests on March 30th. [Dkt. #16]. They served a second set on September 9th. [Dkt. #25]. There appears to have been little or no activity on plaintiff's part during this time; plaintiff certainly does not allude to any in its motion. The fact is that, despite filing her Complaint *back on December 10, 2019*, plaintiff did not issue *initial* written discovery requests to defendants *until October 9, 2020*. [Dkt. #56, at Par. 11]. That was a mistake. It meant that, if everything went perfectly – and it *never* does in litigation – plaintiff would not receive defendants' responses until just five weeks before discovery closed. In any case, that would allow very little time to consider those responses and plan and implement a next step. Suppose there were problems with the opponent's responses – as almost always are. Five weeks is hardly enough time to go over the responses, meet and confer, and put together a motion to compel, let alone to brief the motion and get a resolution from the court. No lawyer could reasonably suppose that the other side would not need time to respond and thereafter for the court to need time to consider the briefs and write a reasoned Opinion.

In addition, plaintiff's decision to take approximately half a year to serve initial written discovery meant that plaintiff did not issue *any* notices of depositions or attempt to schedule the depositions of ICR employees until December 17, 2020. For some unknown reason, plaintiff depicts this as prompt in her brief because it was the same day the court changed its mind and granted plaintiff's motion for a discovery extension. [Dkt. #61, at 5]. But, plaintiff could not have – should not have – presumed the court would grant a validly opposed motion for an extension of the deadline on the day discovery had been set to close as of April 30th. [Dkt. #56-4]. Really, that type of presumption is inexcusable – and contrary to sound and well known practices. At every turn, plaintiff seemed to disregard or neglect deadlines and timelines, as well as the fact that under the

7

Local Rules the discovery deadline means discovery must be *completed* by that date; not heaped on one's opponent or the court by that date. *See* N.D.Ill. Standing Order 16.1; *see also RTC Indus., Inc. v. Fasteners for Retail, Inc.*, 2020 WL 215750, at *6 (N.D. Ill. 2020); *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 214 (N.D. Ill. 2013); *Finnerman v. Daimler Chrysler Corp.*, 2017 WL 4772736, at *4 (N.D. Ill. 2017).

And, as it happened, plaintiff's unexplained (and improper) delay in issuing written discovery also meant that she waited until December 14, 2020—two days prior to fact discovery closure – to address defendant's offers to meet and confer over those inevitable problems that did come up with responses. That was, to say the least, improper. According to plaintiff's timeline, although she was unsatisfied with defendants' discovery responses to her October 9th requests, she did nothing until that late date. In response, defendants offered to meet and confer on December 16, 2020, in advance of the then-upcoming status hearing before the Court on December 17, 2020, (or December 22nd). But plaintiff claimed she would be unavailable. [Dkt. # 56-5]. Instead, at 5:30 p.m. on December 14, 2020, plaintiff informed defendant she'd be filing a motion to compel and extension of discovery the next day. [Dkt. # 56-3].

In that motion, filed *the day before discovery closed*, the plaintiff asked for an extension of discovery of 75 days, to March 1, 2021. [Dkt. #46]. The only reason presented in the terse and unsupported motion was that the extension was being requested "due to outstanding discovery issues related to Defendant's responses to written discovery and in order to complete Plaintiff's remaining witness depositions." [Dkt. # 46]. That's a boilerplate reason and is essentially meaningless, especially given the requirements of Fed.R.Civ.P. 6(b).

But, more importantly, the additional time needed to address both of those issues was a

product of plaintiff's own delays and lack of diligence discussed above and, because of that – and the fact that the motion came, inexplicably, at the eleventh hour – I denied it in an Opinion that provided a template for proper timing and filing of motions for extensions of time. [Dkt. #49]. But, for unexplained reasons, I overturned that order the very next day and granted plaintiff a 45-day extension to January 29, 2021, despite defendants' valid and understandable objections, on December 17th. [Dkt. #50]. In hindsight, that was improvident. If the court made a manifest error in these proceedings, it was in giving the plaintiff a second chance to make up for her lack of diligence, and in not according sufficient credence to the position of the defendants.

Despite all that had occurred – *at 6:44 p.m. on the day before the new discovery deadline* – the plaintiff filed *another* last-minute motion to extend discovery, combined with a motion to compel. The plaintiff wanted *another* 45-day extension; essentially, she was bound and determined to get not only the original extension to March 1st that she had been denied, but an additional two weeks. I denied this motion, detailing a number of reasons for doing so in a lengthy minute order entered January 29th. [Dkt. #57]. Given the plaintiff's motion, it appeared as though plaintiff had ignored, or misread, my previous ruling on her previous last-minute motion for an extension of the discovery deadline.

The plaintiff did have an issue, however. She claimed she had only learned of the existence of an Event Recorder – which she submits is essential to her case – at the January 20, 2021 deposition of Brian Torres-Regnier. [Dkt. #61, at 6]. Of course, as anyone reading the timeline can see, if plaintiff did not learn of the event recorder until late in the game, that was a product of her delays, one inevitably and predictably leading to another, in various facets of discovery. Moreover, plaintiff has a serious problem regarding when she should have known about the existence of an

9

event recorder.

Plaintiff contends that the event recorder ought to have been produced in response to her October 2020 discovery requests, specifically:

RTP 14: Any and all performance and/or work quality evaluations of Plaintiff.

RTP 22: Any and all documents, including correspondence, e-mail, memos, notes, reports, computer data, or otherwise referring or relating to any denial of certification, criticism, demotion, suspension, counseling, warning, any other criticism of Plaintiff's job performance.

[Dkt. #61, at 5]. But the event recorder is not, and was not, used in evaluations or in "any denial of certification, criticism, demotion, suspension, counseling, warning, any other criticism of Plaintiff's job performance." Mr. Condon testified as such at his deposition. He said he had never reviewed one in connection with a skills evaluation, and federal regulations did not allow for it. [Dkt. #62-17, at 64]. Mr. Torres-Regnier testified the download – a record of use of throttle and brake – was not used because he did not have any questions in those areas. [Dkt. #62-15, at 74-76]. According to Section 5.B. of the Engineer Certification Program, the event recorder does not come into play until on-the-job training. [Dkt. #62-4, at 12/23]. It may also be used in annual reviews of certified engineers. [Dkt. #62-4, at 17/23].

In plaintiff's reply brief, she concedes she always "was aware that there was an 'event recorder' on the trains," but did not request it in discovery because "she did not know precisely what it did, what information it contained and how it was used." [Dkt. #64, at 11]. That is a difficult and unacceptable excuse to accept in what is a long line of excuses.[4] Importantly, and disconcertingly,

---

[4] Certainly, plaintiff could not honestly claim not to have know about the existence of an event recorder because knowledge of it is a requirement of the job she alleges she was qualified for. [Dkt. #62-4. At 20/23 ("A locomotive mounted safety device includes: Event Recorders, alertors, deadman controls, and automatic train control equipment.")].

the plaintiff's reply brief is the first time in these proceeding that she is frank about having known there was an event recorder. She did not disclose her knowledge in her January 28th Motion to Compel and Extend Fact Discovery. [Dkt. #56, at Pars. 38-39]. Worse, in her Motion for Reconsideration, she specifically stated that "Plaintiff did not find out about its existence until a deposition on January 20, 2021,. . . ." [Dkt. #61, at 3]. Given her concession in her reply brief that she was aware there was an event recorder, that statement was a misrepresentation to the court.[5]

In any event, the defendants produced the aforementioned Engineer Certification Program on November 20, 2020. [Dkt. #62-2]. Clearly, plaintiff should have known about it at least as early as that. But, in a footnote in her reply brief, plaintiff complains that the discovery defendants produced regarding the event recorder back on November 20th does not "contain[] a description of precisely how an event recorder works and how it can be used . . . ." [Dkt. #64, at 11 n.4]. But the passages in the Engineer Certification Program provide enough information to alert the reader to the general idea:

> During the OJT portion of engineer training, the student will be monitored through the use of the on-line Engineer Daily Evaluation and Locomotive Engineer Proficiency Profile program which uses train handling data remotely received from the locomotive event recorder. This will be done to monitor the student's progress, and provide feedback and additional instruction to the student.

---

[5] We do not wish to assail anyone by pointing this out. But plaintiff's Motion for Reconsideration of necessity occasioned a careful scrutiny of plaintiff's diligence and the accuracy of her narrative that the court would have preferred to avoid. "Honesty of purpose prompts frankness of statement." *Crosby v. Buchanan*, 90 U.S. (23 Wall.) 420, 457, 23 L.Ed. 138 (1875); *United States v. Black*, 684 F.2d 481, 484 (7th Cir. 1982). The court will merely advise plaintiff that a party that misrepresents facts, mistakenly or otherwise, to a court, "cannot expect favorable treatment on matters of discretion." *Campbell v. Clarke*, 481 F.3d 967, 969 (7th Cir. 2007); *see also Urban 8 Fox Lake Corp. v. Nationwide Affordable Hous. Fund 4, LLC*, 334 F.R.D. 149, 162 (N.D. Ill. 2020)(misrepresentation as to description of a document); *Am. Family Mut. Ins., Co. v. Roth*, 2008 WL 4876839, at *4 (N.D. Ill. 2008)(claim that defendants did not lie about not "printing" document because they "copied" it). It would have been best for all concerned had plaintiff been frank about knowing that locomotives had event recorders long before her reply brief.

[Dkt. #62-4, at 12/23]. So, clearly, the locomotive contains a computerized device that records train handling data. The point is driven home later in the document:

> Analysis of event recorder data by download of the event recorder may be used instead of a monitoring check ride to satisfy the annual performance monitoring requirement. A Designated Supervisor of Locomotive Engineers when utilizing a download, will analyze an engineer's entire trip or tour of duty and record the results on a Monitoring/Skills Performance Report. A copy of the report or report card must also be sent to the engineer with an explanation of any needed action the engineer must take to correct deficiencies. Arrangement must then be made to make the required entry on the engineer's certification card within 30 days.

[Dkt. #62-4, at 17]. Any reader ought to have been alerted not only to the existence of an event recorder and enough about what it does to know it might be important in the case. And while lawyers, just as judges, are rarely if ever engineers – or chemists or police officers or steelworkers, etc. – their clients are – to say nothing of technical advisors and experts who are specialists in the cases in which they asked to consult or otherwise to give assistance. Between counsel and client, who concedes she knew about the event recorder, this ought to have been all the information needed to conduct – even if necessary – some minimal inquiry and make a request and depose a witness. In other words, the claim that plaintiff did not know about the event recorder until Mr. Torres-Regnier's January 20th deposition falls flat, and does not justify the relief that is sought.

**IV.**

In the wake of the late-noticed depositions, plaintiff determined that two failed, unsupported attempts at getting all the time she wanted, and the granting of one extension over the defendants' objections, were not sufficient. At the status hearing on February 2nd, she said that she would be filing a Motion for Reconsideration of the January 29th Order, and would need ten days to do so. [Dkt. #58]. A lengthy briefing schedule meant that resolution of this matter would likely not be completed until the middle of March and that meant that – in addition to plaintiff waiving any

12

arguments she might have been able to raise in the future, *supra* at 1-2 – if things went plaintiff's way with the Motion for Reconsideration, discovery would not close until the beginning of May. In essence, that would give the plaintiff a four-and-a-half-month discovery extension when her initial, unsupported request didn't even merit the 45-day one she originally got back on December 17th – again, over the defendants' valid objections. The motion for reconsideration, rather than attempting to show where the court committed a manifest error of fact or law, is really just an attempted end run around the court's scheduling orders. It is well to recall the Seventh Circuit's stern warning: "We live in a world of deadlines, the practice of law is no exception." *Raymond v. Ameritech Corp.*, 442 F.3d 600 (7th Cir. 2006). Thus, courts ought not countenance attempted evasions of otherwise proper schedules.

As we have shown, this case involves an exercise of the considerable discretion a court has in resolving discovery matters. *See, e.g., Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Eng'rs., Inc.*, 755 F.3d 832, 839 (7th Cir. 2014); *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1115 (7th Cir. 2013); *GCIU-Employer Retirement Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1026 (7th Cir. 2009). As is clear from the foregoing, the plaintiff has not met her burden of demonstrating that the court made any manifest error of fact or law; there was no "wholesale disregard" by the court of controlling principle or of the relevant facts in a way that disadvantaged the plaintiff. *Burritt*, 807 F.3d at 253. Quite the contrary. To grant plaintiff's Motion for Reconsideration under the circumstances presented by this case – which include plaintiff not being frank about being aware of the event recorder all along – would be contrary to the law and would ignore the relevant facts of the case. The Motion for Reconsideration [Dkt. #60] is denied.

          **ENTERED:**_____
                      **UNITED STATES MAGISTRATE JUDGE**

**DATE:** 3/31/21