IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CYNTHIA VANN-FOREMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19 C 8069 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| ILLINOIS CENTRAL RAILROAD COMPANY | ) | |
| d/b/a Canadian National Railway Company, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Cynthia Vann-Foreman has sued her employer, defendant Illinois Central Railroad Company, claiming that she was discriminated against because of her race and retaliated against for complaining about improper racial comments made to her by a co-worker, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et. seq. Defendant has moved for summary judgment under Fed. R. Civ. P. 56. For the reasons described below, defendant's motion is denied.

## BACKGROUND

Plaintiff is an African American woman who began employment with defendant as a locomotive engineer on November 10, 2014. She was initially certified as a locomotive engineer in 2011 when she was employed by BNSF. That certification carried over to her employment with defendant, although defendant required plaintiff to complete recertification training and testing. On July 31, 2015, plaintiff violated multiple company rules by operating a train in an unsafe manner. Defendant charged plaintiff with three separate rules violations and, following an investigation, on February 16, 2016, terminated plaintiff's employment. On July 12, 2016, plaintiff filed a charge of discrimination with the Equal Employment Opportunity

Commission ("EEOC"), and she also grieved her termination through the Brotherhood of Locomotive Engineers and Trainmen's ("BLET") collective bargaining agreement ("CBA") with defendant. Although her termination was initially upheld, a federal arbitration panel ultimately reinstated plaintiff to service as an engineer.

Plaintiff returned to work on July 4, 2018, after being out of service as an engineer for two years. During that period, her certification lapsed. As a result, she had to re-certify as a locomotive engineer. To prepare for re-certification plaintiff underwent a medical review, rules training and on-the-job territory familiarization trips. As part of the re-certification process plaintiff was given a written knowledge exam on which she scored 95% and above on all parts.

On September 17, 2018, plaintiff complained to supervisor of locomotive engineers ("SLE") Brian Torres-Regnier that locomotive engineer Tim Gerten had made a racist remark to her. She requested a meeting with superintendent Steve Miller. The following day she met with Miller and assistant vice president Austin McConnell about her complaint. After that meeting Torres-Regnier decided to schedule plaintiff's first train handling skills performance exam for that same day. Torres-Regnier performed the exam. Under defendant's federally approved Locomotive Engineer Certification Program ("LECP") plaintiff had to score 80% or better. Torres-Regnier scored her at 59.42%. Under the LECP and the CBA, anyone who fails is given the opportunity to prepare for and perform another skills test under the supervision of a different SLE.

Plaintiff's second test was assigned to SLE Larry Tharpe. Torres-Regnier called Tharpe and told him why he had failed plaintiff. Senior Supervisor of Locomotive Engineers Stephen Condon also spoke with Tharpe before the second test, telling Tharpe to "evaluate her fairly" so

2

there were no "gray areas." Plaintiff also claims that Steve Miller, to whom she had complained about the discriminatory comment, spoke to Tharpe before the test.

Plaintiff claims that Tharpe berated and intimidated her throughout the test. Plaintiff claims that after she completed the second test but before Tharpe had completed the evaluation, Torres-Regnier told plaintiff, in a snide manner, that she would not be around to take a vacation. Tharpe gave plaintiff a 63.44%. Tharpe testified that during the test he had to take control of the locomotive, causing an automatic failure. Tharpe also claims that he was unaware of plaintiff's complaint about Gerten or that she had previously filed an EEOC charge against defendant.

On October 10, 2018, Condon sent plaintiff a letter indicating that defendant intended to deny plaintiff's re-certification because she failed the two skill tests. Plaintiff sent Condon a rebuttal letter on October 28th, claiming that she was not speeding as Torres-Regnier reported and that the "event recorder" would support her position. She also told Condon that Torres-Regnier had created a hostile work environment for her. Condon acknowledged that he received plaintiff's complaint but did not investigate after Torres-Regnier denied making the vacation comment. On October 29, 2018, Condon issued a notice of denial of re-certification. Without the certification plaintiff cannot work as a locomotive engineer.

## DISCUSSION

Defendant has moved for summary judgment on both counts. Summary judgement is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to

3

permit a jury to return a verdict for that party." Brummett v. Sinclair Broadcast Group, Inc., 414 F.3d 686, 692 (7th Cir. 2005). When considering a motion for summary judgment, the court must construe the evidence and make all reasonable inferences in favor of the non-moving party. Hutchison v. Fitzgerald Equip. Co., Inc., 910 F.3d 1016, 1021 (7th Cir. 2018). "On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are the jobs for a factfinder." Johnson v. Advocate Health and Hospitals Corp., 892 F.3d 887, 893 (7th Cir. 2018).

In counts I and II plaintiff alleges that she was discriminated against based on her race and retaliated against for complaining about Gerten's racial remarks in violation of Title VII. Title VII prohibits an employer from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "When a defendant a defendant moves for summary judgment [on a Title VII claim], the singular question for the district court is whether the plaintiff has introduced evidence that would permit a reasonable factfinder to conclude that the plaintiff's race . . . . caused the discharge or other adverse employment action." Igasaki v. Ill. Dept. of Fin. And Professional Reg., 988 F.3d 948, 957 (7th Cir. 2021) (internal quotations omitted).

Title VII also contains an anti-retaliation provision that "forbids an employer from discriminating against an employee . . .who 'has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].'" Stephens v. Erickson, 569 F.3d 779, 786 (7th Cir. 2009) (quoting 42 U.S.C. § 2000e-3(a)). This provision "seeks to prevent employer interference with unfettered access to Title VII's remedial

mechanisms . . . by prohibiting employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers." Id. To survive summary judgment on a Title VII retaliation claim, a plaintiff must produce evidence from which a reasonable factfinder could conclude that the plaintiff's engagement in protected activity caused a materially adverse employment action. Fields v. Board of Education of the City of the City of Chicago, 928 F.3d 622, 626 (7th Cir. 2019).

Defendant first argues that plaintiff has failed to exhaust her available administrative remedies. Specifically, defendant argues that plaintiff failed to timely file charge before the EEOC or the Locomotive Engineer Review Board ("LERB"). Defendant is factually incorrect with respect to plaintiff's EEOC charge, and legally incorrect with its argument that plaintiff was required to exhaust with the LERB.

Generally, to bring a Title VII claim, a plaintiff must file an EEOC charge within 300 days of the conduct underlying the claim. 42 U.S.C. § 2000e-5(e)(1). Defendant argues that plaintiff's 2018 EEOC charge does not claim any adverse action regarding the denial of her locomotive engineer certificate. The charge, which was filed on December 5, 2018, clearly stated:

> I have been treated in a disparate and discriminatory manner due to my race. I filed a complaint against my Senior Lead for telling racists 'jokes.' The complaint was later turned over to my Superintendent Shortly thereafter, I was retaliated against and placed on suspension for allegedly failing a ride along. It is clear the CN is creating a pretext to terminate my employment. I believe I have been discriminated against because of my race, African American, in violation of Title VII of the Civil Rights Act of 1964 (Title VII).

5

"Generally, a plaintiff may not bring claims under Title VII that were not originally included in the charges made to the EEOC." Sitar v. Ind. Dep't of Transp., 344 F.3d 720, 726 (7th Cir. 2003). But the charge "need not allege . . .each and every fact that combines to form the basis of each claim." Cheek v. W. & S. Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994). "Even a charge that is not explicit in an employee's complaint will be deemed exhausted if the current claim reasonably could have developed from the EEOC's investigation of the charges before it, such that the EEOC charge and the complaint describe the same conduct and implicate the same individuals." Hubbard v. M & K Truck Centers, 2020 WL 7027607, *5 (N.D. Ill. Nov. 30, 2020) (internal quotations omitted). Claims are permissible if there is a factual relationship between the claims and the charge, and the Seventh Circuit accords plaintiffs substantial leeway in determining whether claims are reasonably related to an EEOC charge. Id.

In the instant case, plaintiff's EEOC charge directly claims that she was retaliated against for complaining about racist jokes when she was "failed" on the ride alongs, and that she was discriminated against because of her race. Even if her instant claims are not explicitly covered in the EEOC charge (and they are), they are undoubtedly related to the charge. Consequently, the court rejects defendant's argument that plaintiff has failed to exhaust her administrative remedies under Title VII.

Next, defendant argues that plaintiff had to exhaust before the LERB pursuant to the provisions of the Federal Railroad Safety Act, 49 U.S.C. § 20100 et seq. ("FRSA"). The FRSA was enacted "to reduce rail-road related accidents and deaths and to improve rail safety more generally." Southern Pac. Transp. Co. v. Public Util. Comm'n, 9 F.3d 807, 812 (9th Cir. 1993).

6

Under the FRSA, the FRA has issued administrative rules regarding training and certification of locomotive engineers to ensure that locomotives are operated only by qualified engineers. The FRA itself does not participate in engineer testing or certification, but administers the regulations through approval and monitoring of each individual railroad's testing and training regimes. Carpenter v. Mineta, 432 F.3d 1029, 1031(9th Cir. 2005). The FRA has a dispute resolution process "in which a person denied engineer certification may obtain a fresh determination by the FRA of whether the railroad's decision was correct." Id. (citing 49 C.F.R. 240.401-240.411). The FRA has delegated responsibility for hearing initial petitions to the LERA. Id.

The FRA also has an express preemption clause providing that any state laws (including common laws), regulations, or orders relating to railroad safety are preempted by federal administrative regulations or orders "covering the subject matter of the State requirement." 49 U.S.C. § 20106 (a). A state requirement covers the same subject matter of an FSRA/FRA regulation if it "addresses the same safety concern as the FRA regulation." Burlington N.R.R. Co. v. Montana, 880 F.2d 1104, 1105 (9th Cir. 1989).

Relying on Peters v. Union Pacific R. Co., 80 F.3d 257 (8th Cir. (1996), defendant argues that because plaintiff is complaining about being denied certification, she has to exhaust her remedies under the FRSA. In Peters, the plaintiff brought a state law conversion claim against the defendant for refusing to return his locomotive engineer certificate after the end of a one month suspension. The district court dismissed his claim for failing to exhaust his administrative remedies under the FRSA, and the Eighth Circuit affirmed. Before reaching the exhaustion issue, however, the court first determined that the plaintiff's state law conversion

7

claim was preempted by the FRSA because he was challenging the railroads certification decision.

In the instant case, plaintiff's claim is brought under a federal statute, not a state law or regulation addressing the safety concerns of the FRSA regulation. Thus, the FRSA's preemption provision does not directly apply. Additionally, Plaintiff complains that she was discriminated against and retaliated against because she complained about racist jokes. The subject matter of Title VII is discrimination. It is not a safety statute. Thus, Title VII and the FRSA address different subject matters entirely. See Glow v. Union Pac. R.R. Co., 652 F. Supp. 2d 1135, 1145-46 (E.D. Cal 2009) (FRSA does not preempt the ADA.) Consequently, the court concludes that the FRSA does not preempt Title VII and plaintiff was not required to exhaust any available remedies under the FRSA.

Next, defendant argues that plaintiff's claims are precluded by the Railway Labor Act ("RLA"). The RLA governs railroads and airlines and provides a comprehensive framework for resolving labor disputes. Brown v. Illinois Central R.R. Co., 254 F.3d 654, 658 (7th Cir. 2001). "All minor disputes must be adjudicated under RLA mechanisms, which include an employer's internal dispute-resolution procedures and an adjustment board established by the unions and the employer." Id. Minor disputes "grow out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions, and involve controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." Id. (internal quotations omitted). "A plaintiff's claim is properly characterized as a minor dispute (and is therefore subject to mandatory and exclusive arbitration under the RLA) when resolution of the plaintiff's claim requires interpretation of the CBA." Id. A claim

8

brought under an independent federal statute, such as plaintiff's Title VII claim, is precluded by the RLA "only if it can be dispositively resolved through an interpretation of a CBA. This occurs only when a provision of the [CBA] is the subject of the dispute or the dispute is substantially dependent upon an analysis of the terms of a [CBA]." Id. at 668. A claim will not be precluded "merely because certain provisions of the CBA must be examined and weighed as a relevant but non-dispositive factor in deciding a claim or defense." Id. "Purely factual questions about an employer's conduct or motivation do not require a court to interpret any term of a collective bargaining agreement." Lyles v. Northeast Illinois Regional Commuter Railroad Corp., 2020 WL 7260801 at 3 (N.D. Ill. Dec. 10, 2020). Generally, the RLA does not preclude claims involving "statutory protections against employment discrimination and retaliation." See Carlson v. CSX Transp., Inc., 758 F.3d 819, 832 (7th Cir. 2014).

Defendant argues that plaintiff's claims are governed by Article 13 of the CBA, which provides that an employee's seniority and employment may be terminated when the required certification standards are not met. This argument misinterprets plaintiff's claims. Plaintiff is not challenging that provision; she is alleging that the procedures were applied in a discriminatory manner. See Caroma v. Southwest Airlines Co., 536 F.3d 344, 349-50 (5th Cir. 2008) (claims under Title VII avoided RLA preclusion because plaintiff had alleged "that CBA procedures were applied in a discriminatory manner, not that the CBA procedures were fundamentally discriminatory") (emphasis in original). Plaintiff's claims that she was subject to racial discrimination and retaliation are independent of the CBA and are not precluded by the RLA.

9

Finally, defendant argues that plaintiff cannot establish her claim of discrimination. To establish a prima facie case of race discrimination, plaintiff must show that: 1) she is a member of a protected class; 2) her job performance met the employer's legitimate expectations; 3) she suffered an adverse employment action; and 4) another similarly situated individual not in the protected class was treated more favorably. McKinney v. Office of Sheriff of Whitley Cty, 866 F.3d 803, 807 (7th Cir. 2017). Plaintiff does not have to follow this framework, (established in McDonnell Douglas Corp v. Green, 411 U.S. 792 (1973), and can simply argue that the admissible evidence supports her claim. As noted above, the singular question for the court is whether plaintiff has introduced evidence that would permit a reasonable factfinder to conclude that plaintiff's race caused the adverse employment action. Igalski, 988 F.3d at 957.

Plaintiff's race discrimination claim in Count I fails under either method. She is obviously a member of a protected class and has suffered an adverse employment action. But even assuming she was meeting her employer's legitimate expectations, she has failed to identify any similarly situated individual not in the protected class who was treated more favorably. Nor has she presented any evidence that either Torres-Regnier or Tharpe failed her because she is African American. Indeed, she has identified no racist remarks or any other facts from which a reasonable fact finder could conclude that either Torres-Regnier, Tharpe, or Condon acted based on race. The only racist remark plaintiff has identified was allegedly made by Gerten, who had no input into the decision to test plaintiff or deny her certification. Consequently, the court grants defendant's motion for summary judgement on Count I.

As to her retaliation claim, plaintiff must produce evidence from which a reasonable factfinder could conclude that plaintiff's engagement in protected activity caused the materially adverse employment action. Fields, 928 F.3d at 626.

Although her case is thin, the court concludes that plaintiff has provided sufficient evidence for a reasonable factfinder to conclude that defendant's decision to fail her on the ride alongs and deny her certification was in retaliation for complaining about Gerten's racial comments. The case is basically a "he said/she said" situation, with plaintiff's description of the ride along tests differing significantly from those of Torres-Regnier and Tharpe. The fact that Torres-Regnier elected to schedule the ride along immediately after plaintiff complained to him about the racist comments supports her retaliation claim. See McClendon v. Indian Sugars, Inc., 108 F.3d 789, 796 (7th Cir. 1997) (Generally, a plaintiff may establish a causal link between the protected activity and the adverse action through evidence that the adverse action took place on the heels of the protected activity.).

Defendant argues that plaintiff's failure on the ride along tests establishes a legitimate non-discriminatory or retaliatory reason for the denial of certification. But both those tests were graded subjectively by Torres-Regnier and Tharpe, and plaintiff disputes the grades they gave her and the reasons for those grades. Plaintiff claims that an "event recorder" would support her position and demonstrate that Torres-Regnier and Tharpe are lying about her performance, but she was unable to obtain this recorder through the discovery process and thus cannot rely on it for purposes of summary judgment. (See Docs. 66 and 74).[1] At this stage, the court may not

---

[1] Plaintiff was unable to obtain the event recorder due to violations of the Magistrate Judge's orders and deadlines, which were affirmed by this court. These rulings were not intended to prevent plaintiff from attempting to subpoena the event recorder for purposes of trial.

11

make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts, Johnson, 892 F.3d at 893, and must construe the evidence and make all reasonable inferences in plaintiff's favor. Hutchison, 910 F.3d at 1021. If a reasonable factfinder believes plaintiff's version of the ride along tests, it could conclude that the denial of certification was in retaliation for her complaint about Gerten. Consequently, the court denies defendant's motion for summary judgment on count II.[2]

## CONCLUSION

For the reasons described above, defendant's motion for summary judgment [Doc. 81] is granted as to Count I and denied as to Count II.

**ENTER:**

Robert W. Gettleman
United States District Judge

**DATE:** January 20, 2022

---

2 Defendant points out that in her response brief plaintiff indicates that her response letter to Condon indicated that she believed that Torres-Regnier had subjected her to a hostile work environment. She made no such claim in either her EEOC charge or the instant complaint, and her brief indicates that she makes the argument only to show that Condon was aware that she had engaged in protected activity when he made the decision to deny certification. Consequently, the court does not interpret her brief as attempting to raise a hostile work environment claim.